LAWYERS FOR CLEAN WATER, INC.
Caroline Koch (Bar No. 266068)
        Email: caroline@lawyersforcleanwater.com
Layne Friedrich (Bar No. 195431)
        Email: layne@lawyersforcleanwater.com
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone:  (415) 440-6520
Facsimile:  (415) 440-4155

*Attorneys for Plaintiff*
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a California non-profit corporation, | Civil Case No. 2:15-cv-00760-MCE-AC |
| Plaintiff, | **CONSENT DECREE; ORDER** |
| vs. | |
| SECURITY CONTRACTOR SERVICES, INC., a California corporation, | **(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |
| Defendant. | |

## CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff California Sportfishing Protection Alliance ("Plaintiff" or "CSPA"), and Defendant Security Contractor Services, Inc ("Defendant"). The entities entering into this Consent Decree are collectively the "Settling Parties."

**WHEREAS**, CSPA is a 501(c)(3) non-profit public benefit conservation and research organization established in 1983 for the purpose of conserving, restoring, and enhancing the state's water quality, wildlife, fishery resources, aquatic ecosystems, and associated riparian habitats;

**WHEREAS**, Defendant are owners and/or operators of the metal and fabricated wire manufacturing facility located at 5339 and 5311 Jackson Street, in North Highlands, California 95660 ("SCS Facility" or "Facility");

**WHEREAS**, SCS leases property from H&H Properties ("H&H") at 5339 Jackson Street;

**WHEREAS**, SCS is the sole owner and operator of Facility;

**WHEREAS**, SCS is responsible for all storm water compliance and management under WDID # 5S34I018621;

**WHEREAS**, H&H is the land owner, is no longer identified as an owner and/or operator of the Facility under WDID # 5S34I018621, and is not responsible for the industrial activities or storm water management at the facility;

**WHEREAS**, H&H was dismissed as a defendant from the above-captioned action without prejudice on September 10, 2015 (Dkt. No. 6);

**WHEREAS**, Plaintiff contends that Defendant discharges polluted storm water into Magpie Creek, which flows to Steelhead Creek (also known as the Natoma East Main Drainage Channel) which discharges to the lower reach of the American River which, in turn discharges to the Sacramento River;

**WHEREAS**, discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit NO CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, Order No. 97-03-DWQ, as amended by Order No. 2014-0057-DWQ ("Storm Water Permit") and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS**, on February 3, 2015, Plaintiff served Defendant, the United States Environmental

Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board") and the Regional Water Quality Control Board, Central Valley Region, ("Regional Board") with a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the CWA, 33 U.S.C. § 1365(a) and (b). The Notice Letter alleged violations of Sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342, and violations of the Storm Water Permit;

**WHEREAS**, on April 8, 2015, Plaintiff filed a complaint against Defendant in the United States District Court, Eastern District of California (Case No. 2:15-cv-00760-MCE-AC) alleging ongoing violations of the CWA (hereinafter "Complaint");

**WHEREAS**, Defendant denies all allegations in the Notice Letter and Complaint;

**WHEREAS**, Plaintiff and Defendant has agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings and without any admission of liability on the part of the Defendant;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

2. Venue is appropriate in the Eastern District pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations took place is located within this District;

3. The Complaint states claims upon which relief may be granted pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365;

4. Plaintiff has standing to bring this action;

5. The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any ongoing, unresolved dispute regarding Defendant's compliance with this Consent Decree.

/ / /

## I.      AGENCY REVIEW AND TERM OF CONSENT DECREE.

6.       Plaintiff shall submit this Consent Decree and [Proposed] Order to the United States Department of Justice and the United States Environmental Protection Agency (collectively "Federal Agencies") within three (3) days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer as expeditiously as possible, and within a reasonable amount of time to attempt to resolve the issue(s) raised by the Federal Agencies.

7.       The term "Effective Date" as used in this Consent Decree shall mean the last day for the Federal Agencies to comment on the Consent Decree, i.e., the forty-fifth (45th) day following the Federal Agencies' receipt of the Consent Decree, or the date on which the Federal Agencies provide notice that they require no further review, whichever occurs earlier.

8.       This Consent Decree will terminate five (5) years from the Effective Date, unless there is an ongoing, unresolved dispute regarding Defendant's compliance with this Consent Decree, in which case the Consent Decree will terminate upon final resolution of the dispute. If, however, after the 2016-2017 reporting year there are no exceedances of any Table 1 Numeric Limits in samples from at least eight (8) consecutive storm events (sampling can be from a qualified storm event[1] or non-qualified storm event but must otherwise be conducted in accordance with the terms of paragraphs 16.3-16.9 of this Consent Decree), and Defendant's obligations under paragraphs 33-35 of the Consent Decree have been met the Consent Decree will terminate upon entry of a stipulated dismissal to be executed by the Settling Parties, unless there is an ongoing, unresolved dispute regarding Defendant's compliance with this Consent Decree, in which case the Consent Decree will terminate upon final resolution of the dispute. For the purposes of this early termination provision, there must be ten (10) days between any storm event (regardless of whether the storm event is a qualified or non-qualified storm event).

## II.      COMMITMENTS OF THE SETTLING PARTIES.

### A.      Storm Water Pollution Control Best Management Practices.

9.       It is the express purpose of the Settling Parties entering into this Consent Decree to

---

[1] As defined in paragraph 16.1 below.

further the objectives set forth in the Clean Water Act and to resolve those issues alleged by CSPA in its

Complaint. In light of these objectives and as set forth fully below, Defendant agrees, *inter alia*, to

comply with the provisions of this Consent Decree, the requirements of the Storm Water Permit, and all

applicable provisions of the CWA.

10.     It is Defendant's position that it has implemented numerous structural and non-structural

Best Management Practices ("BMPs") at the SCS Facility, which Defendant will continue to implement.

Defendant further alleges that the implementation of these BMPs has been staged since March 2015, and

include:

- All stored outside materials are stored off the ground on pallets or wooden blocks.
- As much as currently possible, metal bearing materials, especially galvanized materials, are stored on graveled, pervious areas on the site.
- Around SP-1 in particular, nearly all of the rental fencing has been relocated to graveled/ pervious areas on site, storage of materials in general has been reduced, and sweeping has increased to occur at the end of every working day.
- Daily mechanical and manual sweeping in high traffic delivery and pickup areas.
- When materials are moved to sell or rent, the area under the stored material is swept mechanically and manually.
- Forklift maintenance is performed in the Warehouse Building.
- Use of drop cloths and drip pans during maintenance of equipment and vehicles.
- Use of absorbents and sweeping.
- Use of absorbent socks and/or mats.
- Spill Response.
- Conduct all equipment operation under structural overhead coverage, with the exception of forklift traffic to position and move outside stored materials.
- Tarp coverage for outdoor storage of unused machinery or equipment.
- All machining fines and dust from metal handling or cutting are stored in sealed containers for disposal by outside waste management company.
- All trash dumpsters are covered.
- Preventive maintenance program for operational and yard equipment, plus drainage basin filters. All drainage inlets are equipped with drainage filters that are inspected and changed on a routine schedule and also after a storm event.
- Sediment and erosion control; maintaining established vegetation on facility grounds
- Large metal container (roll-off bin) has been relocated to graveled area.
- Site Security.
- Staff training regarding potential pollutant sources, BMPs implemented and required to be maintained to reduce the possibility of impact by potential pollutant sources, required monthly inspections for Non Storm Water Discharges and to ensure that BMPs are in place and no corrective action is needed, and specific sample collection and handling instructions.

11.     Defendant alleges that among the critical BMPs at the SCS Facility is the movement of

galvanized rolled fence and other galvanized items to areas where there will be little or no storm water discharges that leave the SCS Facility. Defendant alleges that these are source control BMPs and it is Defendant's position that they have been deemed the most effective BMPs in many instances for storm water controls.

12.     Defendant shall (1) develop and implement BMPs identified herein, and (2) develop and implement additional BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit, including but not limited to those that achieve the Best Available Technology Economically Achievable ("BAT") and the Best Conventional Treatment Technology ("BCT") and those BMPs necessary to comply with the Storm Water Permit's Receiving Water Limitations.

13.     2016 BMPs. As of the Effective Date, Defendant shall have developed and implemented the following BMPs at the Facility.

         13.1.  Vehicle Maintenance. If vehicle maintenance is performed at the Facility, it will only be conducted at the following locations: (1) in the paved yard surface north of the northeast corner of the Shop & Office Building, (2) in the paved yard surface northwest of the Warehouse & Office Building and south the DP-2 sampling location, and/or (3) in the paved yard surface adjacent to the east property line and south of DP-1. The vehicle maintenance contracted service provider will employ drip-pans, drop-cloths, absorbent mats and/or absorbents and sweeping to contain any leaks or incidental spills that occur during maintenance work. No outdoor vehicle maintenance will occur immediately before or during a storm event. "Immediately before" a storm event means two (2) hours prior to a 50% chance of precipitation as predicted by the hourly forecast for the City of North Highlands reported by the National Weather Service.

         13.2.  Forklift Maintenance. All forklift maintenance at the Facility will occur indoors.

         13.3.  Mobile Operational Equipment. Mobile operational equipment, with the exception of trucks, tractors, and/or trailer rigs that cannot fit inside the buildings, will be stored indoors during non-operational hours. The Spill

1  Response measure identified in paragraph (ten) 10 above shall apply to spills, if

2  any, from mobile operational equipment.

3      13.4.  <u>Material Storage</u>. All material potentially containing phthalate esters, including,

4  but not limited to, plastics, polymers, PVC, and/or plastic coated fencing, will be

5  stored in Facility drainage areas A and C, which drain to Sample Location DP-

6  2A, only.

7     14.  <u>Total Nitrogen Source Identification and Control</u>. Defendant shall develop and

8  implement a plan to control the discharge of total nitrogen from the Facility as follows:

9      14.1.  <u>Source Identification</u>. Within thirty (30) days of the Effective Date, Defendant

10  shall prepare a work plan for identifying the source of total nitrogen in

11  Defendant's storm water discharges ("Total Nitrogen Source Identification Work

12  Plan"). The Total Nitrogen Source Identification Work Plan shall include a

13  schedule for identifying the source of total nitrogen in Defendant's discharges

14  over the course of the 2015-2016 reporting year.[2]

15       14.1.1.  Within thirty (30) days of the Effective Date, Defendant shall submit

16  the Total Nitrogen Source Identification Work Plan to CSPA for

17  review and comment. CSPA shall review the Total Nitrogen Source

18  Identification Work Plan and provide any comments within fifteen

19  (15) days of receipt. Within ten (10) days of receipt of comments from

20  CSPA, Defendant shall incorporate CSPA's comments into the Total

21  Nitrogen Source Identification Work Plan, or shall justify in writing

22  why any comment is not incorporated.

23       14.1.2.  Any disputes over the adequacy of the Total Nitrogen Source

24  Identification Work Plan shall be resolved pursuant to the dispute

25  resolution provisions of this Consent Decree, set out in Section III

26  below.

27

28  [2] A "reporting year" is July 1 to June 30.

14.2.   Source Control. By June 30, 2016, Defendant shall develop a plan to control total nitrogen in its discharges from the Facility ("Total Nitrogen Control Plan"). The Total Nitrogen Control Plan shall include source control measures and/or treatment technologies that are designed to ensure that storm water discharges from the Facility's Discharge Locations do not contain total nitrogen concentrations in excess of the Table 1 Numeric Limits.

14.2.1.   Defendant shall submit the draft Total Nitrogen Control Plan to CSPA for review and comment. CSPA shall review the draft Total Nitrogen Control Plan and provide any comments within thirty (30) days of receipt. Within thirty (30) days of receipt of comments from CSPA, Defendant shall incorporate CSPA's comments into the Total Nitrogen Control Plan, or shall justify in writing why any comment is not incorporated.

14.2.2.   Any disputes over the adequacy of the Total Nitrogen Control Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

14.2.3.   By October 1, 2016, Defendant shall complete implementation of the Total Nitrogen Control Plan.

**B.      Storm Water Sampling and Discharge Locations.**

15.   Storm Water Sample Locations. The current storm water sample locations at the Facility are identified in subparagraphs 15.1-15.4, below ("Sample Location(s)"), and are identified with corresponding drainage areas A-G on Exhibit A attached hereto.

15.1.   SP-1,

15.2.   DP-2A,

15.3.   DP-2B,

15.4.   DP-1.

16.   Sampling. The following storm water monitoring procedures shall be implemented at the Facility:

16.1.    Frequency. During the life of this Consent Decree, Defendant shall collect samples from all storm water Sample Locations at the Facility from a minimum of five (5) "qualified storm events" that occur in a reporting year such that Defendant collects three (3) samples during the first half of the reporting year and two (2) samples during the second half of the reporting year. A "qualified storm event" is a storm event that produces a discharge from at least one drainage area and is preceded by forty-eight (48) hours with no discharge from any drainage area. If, prior to March 1, Defendant has collected samples from two (2) or fewer qualified storm events, Defendant shall sample at least two (2) non-qualified storm events during operating hours. To satisfy the requirements of this Consent Decree, samples collected during non-qualified storm events must have been collected during storm events that occurred at least ten (10) days apart.

16.2.    Hardness. In the event Defendant seeks to adjust a Numeric Limit for a hardness dependent parameter, Defendant shall first analyze Magpie Creek for hardness at least 4 (four) times, and at least three (3) sample events shall take place during a rain event. Defendant shall submit lab reports of sample analysis results to Plaintiff within ten (10) business days of its receipt. The parties shall meet and confer within twenty-one (21) days of a Settling Party's written request to adjust the Table 1 Numeric Limits for hardness dependent metals based on hardness data of Magpie Creek collected pursuant to this paragraph or other available information to determine whether the requested adjustment appropriate and is based on reliable, representative data.

16.3.    Contained or Stored Storm Water. To the extent water is stored or contained, Defendant shall sample the stored or contained water at the Facility before it is released even if not during operating hours.

16.4.    Parameters. Defendant shall analyze each storm water sample collected from a Sample Location for the contaminants set forth in the Table 1 Numeric Limits with the exception of phthalate esters. Only storm water samples collected at

1    Sample Location DP-2A are required to be analyzed for phthalate esters.

2    16.5.   Laboratory. A laboratory accredited by the State of California shall analyze all

3    samples collected pursuant to this Consent Decree.

4    16.6.   Detection Limits. The laboratory shall use analytical methods adequate to detect

5    the individual contaminants at or below Table 1 Numeric Limits.

6    16.7.   Hold Time. All samples collected from the Facility shall be delivered to the

7    laboratory as necessary to ensure that sample "hold time" is not exceeded for

8    each contaminant sampled. For field measurements, such as pH, Defendant shall

9    use portable instruments, and not pH paper, which shall be calibrated and used

10    according to manufacturers' instructions and approved industry methodology,

11    i.e., 40 C.F.R., Part 136.

12    16.8.   Results. Defendant shall request that sample analysis results be reported to them

13    within ten (10) days of laboratory receipt of the sample, or as soon as possible

14    without incurring "rush" charges.

15    16.9.   Concentrations. Defendant shall request that all sample results for metals be

16    reported by the laboratory in both total and dissolved concentrations.

17    16.10.   Reporting. Defendant shall provide CSPA with the complete laboratory results,

18    including a copy of the Quality Assurance/Quality Control and the laboratory

19    report for all samples collected at the Facility, within ten (10) business days of

20    receiving the results.

21    16.11.   Sampling Reduction. Except as provided in subparagraph 16.12, Defendant can

22    discontinue storm water sample analysis of a parameter listed in Table 1 if (1)

23    the concentration of the parameter does not exceed the Table 1 Numeric Limit in

24    at least five (5) consecutive storm water samples from a qualified storm event

25    and (2) Defendant certifies and demonstrates that the parameter is not used or

26    associated with its industrial activity. Defendant shall contact Plaintiff at least

27    ninety (90) days prior to discontinuing analysis for any required parameter by

28    providing a written explanation for its decision and all relevant laboratory reports

and supporting documentation.

16.12.   Sampling Reduction for Phthalate esters. If the concentration of phthalate esters as analyzed for samples collected at Sample Location DP-2A pursuant to subparagraph 16.4 is a "Non-Detect" in at least two (2) consecutive storm water samples from a qualified storm event, the Settling Parties agree to meet and confer to determine whether it is appropriate to continue to analyze storm water samples for phthalate esters for two (2) additional samples before phthalate esters may be eliminated as a sampling parameter. Plaintiff will not unreasonably withhold its agreement that phthalate esters can be eliminated as a sampling parameter as described in this subparagraph.

**C.   Reduction of Pollutants in Discharges.**

17.   Contaminant Reduction. Defendant shall develop and implement BMPs to reduce pollutants in storm water at the Facility to levels below those in Table 1 ("Numeric Limits").[3] As of the Effective Date, and for the remainder of the life of this Consent Decree, if storm water samples collected at a Sample Location(s) demonstrate an exceedance of any three (3) Numeric Limits in Table 1 in a single reporting year for a particular drainage area, Defendant shall comply with the action plan requirements of paragraph eighteen (18) through twenty (20) for solely the drainage area(s) draining to the Sample Location(s) where the exceedances occurred. For example, if there is an exceedance of Total Suspended Solids during Storm Event number 1 at SP-1 and exceedances of Total Recoverable Zinc and Dissolved Zinc during Storm Event number 2 at SP-1, Defendant would be required to submit an action plan for Drainage Area B.

**Table 1. Numeric Limits**

| Contaminant | Values | Source of Value |
|---|---|---|
| Total Suspended Solids | 100 mg/L | 2008 EPA Benchmark |
| Total Recoverable Zinc | 0.13 mg/L | 2008 EPA Benchmark |
| Dissolved Zinc | 0.127 mg/L | 2008 EPA Benchmark |
| Oil and Grease | 15 mg/L | 2008 EPA Benchmark |
| Total Recoverable Aluminum | 0.750 mg/L | 2008 EPA Benchmark |

[3] The Numeric Limits for zinc are hardness dependent, and may be adjusted as set out in subparagraph 16.2.

| Contaminant | Values | Source of Value |
|---|---|---|
| Total Recoverable Iron | 1.0 mg/L | 2008 EPA Benchmark |
| Nitrate Plus Nitrite | 0.68 mg/L | 2008 EPA Benchmark |
| Phthalate esters | 0.940 mg/L | EPA National Recommended Water Quality Criteria |
| pH | 6.0-9.0 s.u. | 2008 EPA Benchmark |

18.     Action Plan for Table 1 Exceedances. If an action plan is required pursuant to paragraph seventeen (17), Defendant shall submit a plan to Plaintiff for reducing and/or eliminating the discharge of pollutants designed to achieve the Table 1 Numeric Limits ("Action Plan"). An Action Plan shall be submitted by June 1 following the Wet Season[4] during which the numeric value exceedance(s) occurs.

18.1.     2015-2016 Action Plan Requirements. An Action Plan submitted based on sampling data from the 2015-2016 reporting year shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric value(s); (2) an assessment of the source of each contaminant discharged in excess of the numeric value(s); (3) the identification of additional BMPs, including both preventing the exposure of pollutant and pollutant sources to storm water and further treatment of storm water prior to discharge from the Facility that will reduce pollutant concentrations to those below Table 1 Numeric Limits; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible but at least by the beginning of the upcoming Wet Season (i.e., by October 1) unless the Settling Parties agree on a later date based on the time needed to design, procure, and install the necessary equipment or implementation within the required time period is not possible due to Force Majeure, as define in paragraph forty-seven (47), below. CSPA will not unreasonably withhold agreement to extend the deadline, as needed. Any disputes over the deadline for implementation of additional BMPs identified in an Action Plan shall be resolved pursuant to the dispute resolution provisions of

[4] "Wet Season" is defined as October 1-April 30.

1    this Consent Decree, set out in Section III below.

2    18.2.    2016-2017 Action Plan Requirements. An Action Plan submitted based on

3    sampling data collected from the 2016-2017 reporting year shall include at a

4    minimum: (1) the identification of the contaminant(s) discharged in excess of the

5    numeric value(s); (2) an assessment of the source of each contaminant

6    discharged in excess of the numeric value(s); (3) require installation of one of the

7    two following structural BMPs options: advanced treatment control measures

8    comprised of either storage, infiltration, and/or treatment ("Control Measures"),

9    or a combination thereof, with sufficient capacity to treat, to the effluent quality

10   required in Table 1, based on one of the volume based design storm standards

11   specified in Section X.H.6.a. of the Storm Water Permit, including but not

12   limited to the volume of runoff produced by the 85th percentile 24-hour storm

13   event, as determined by local rainfall records, or one of the flow based design

14   storm standards as specified in Section X.H.6.b of the Storm Water Permit

15   including but not limited to the maximum flow rate produced from a rainfall

16   intensity of at least 0.2 inches per hour for each hour of a storm event (Defendant

17   may choose the volume based design or flow based design storm standard with

18   which it will comply); and (4) time schedules for implementation of the proposed

19   BMPs. The time schedule(s) for implementation shall ensure that all BMPs are

20   implemented as soon as possible but at least by the beginning of the upcoming

21   Wet Season (i.e., by October 1) unless the Settling Parties agree on a later date

22   based on the time needed to design, procure, and install the necessary equipment

23   or implementation within the required time period is not possible due to Force

24   Majeure, as define in paragraph forty-seven (47), below. CSPA will not

25   unreasonably withhold agreement to extend the deadline, as needed. Any

26   disputes over the deadline for implementation of additional BMPs identified in

27   an Action Plan shall be resolved pursuant to the dispute resolution provisions of

28   this Consent Decree, set out in Section III below.

18.3.   <u>2017-2018 Action Plan Requirements</u>. Action Plan(s) submitted based on sampling data collected after the 2016-2017 reporting year, and for the remainder of the life of the Consent Decree, shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric value(s); (2) an assessment of the source of each contaminant discharged in excess of the numeric value(s); require implementation of advanced treatment control measures that are designed to achieve pollutant reduction in storm water discharges to levels below the Table 1 Numeric Limits and/or BMPs to prevent and/or reduce exposure of pollutants and pollutant sources to storm water; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible but at least by the beginning of the upcoming Wet Season (i.e., by October 1) unless the Settling Parties agree on a later date based on the time needed to design, procure, and install the necessary equipment or implementation within the required time period is not possible due to Force Majeure, as define in paragraph forty-seven (47), below. CSPA will not unreasonably withhold agreement to extend the deadline, as needed. Any disputes over the deadline for implementation of additional BMPs identified in an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

18.4.   <u>Action Plan Review</u>. CSPA shall have thirty (30) days upon receipt of Defendant's Action Plan to provide Defendant with comments on the Action Plan. Within fifteen (15) days of Defendant's receipt of CSPA's comments on the Action Plan, Defendant shall consider CSPA's comments and shall either incorporate them into the Action Plan or, if Defendant declines to accept one or more of CSPA's comments, provide CSPA with a written explanation of the grounds for rejection.

18.5.   Disputes regarding the adequacy of a particular BMP shall not impact the

schedule for implementing any other BMP set forth in the Action Plan. Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

19.     Defendant shall contact Plaintiff to request an extension of any deadline set forth in this Consent Decree, if necessary, to implement any structural BMPs requiring agency approval. Plaintiff's consent to Defendant's requested extension shall not be unreasonably withheld.

20.     Defendant shall revise its SWPPP and/or Monitoring & Reporting Plan ("M&RP") as applicable within thirty (30) days of receipt of Plaintiff's Action Plan comments to reflect the changes and/or additional BMPs as set forth in the Action Plan. Defendant shall notify CSPA in writing when the Action Plan has been completely implemented, and the SWPPP and/or M&RP have been revised. Defendant shall submit the revised SWPPP and/or MR&P to CSPA for review as set forth in paragraph twenty-eight (28) below.

**D.     Visual Observations.**

21.     All visual observations shall be conducted in accordance with the terms of the Storm Water Permit and this Consent Decree, and shall include at least the following:

      21.1.     <u>Storm Water Discharge Observations</u>. During the life of this Consent Decree, Defendant shall conduct visual observations at each point where storm water is discharged during each rain event.

      21.2.     <u>Non-Storm Water Discharge Observations</u>. During the life of this Consent Decree, Defendant shall conduct monthly non-storm water visual observations at each discharge point.

22.     Defendant shall maintain logs of the visual observations, which shall be included in Defendant's Annual Reports submitted to the Regional Board, and within ten (10) days of Plaintiff's written request.

**E.     Employee Training.**

23.     Within ten (10) days of the Effective Date, Defendant shall conduct additional employee training in order to familiarize employees at the Facility with the requirements of the Storm Water Permit and this Consent Decree. The training program shall include use of written training materials

needed for effective implementation of the training program. Defendant shall also ensure that there are a sufficient number of employees assigned to implement the BMPs and conduct other compliance activities required by the Storm Water Permit and this Consent Decree, and that these employees are properly trained to perform the required activities.

24.    The training program shall require at least the following:

24.1.    <u>Non-Storm Water Discharge Training</u>. Defendant shall train employees on the Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, which can result from improper practices that may produce non-storm water discharges at the Facility, and how to detect and prevent them;

24.2.    <u>BMP Training</u>. Defendant shall train employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent or minimize the exposure of pollutants to storm water, to prevent or minimize the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the Facility;

24.3.    <u>Sampling Training</u>. Defendant shall designate an adequate number of employees to ensure the collection of storm water samples from each discharge location as required by this Consent Decree and/or the Storm Water Permit. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

24.4.    <u>Visual Observation Training</u>. Defendant shall provide training to all individuals performing visual observations at the Facility pursuant to this Consent Decree and/or the Storm Water Permit that includes when visual observations are required, the different types of visual observations required, and instruction on proper record keeping under the Storm Water Permit.

25.    Training shall be provided on an annual basis, or as otherwise required to ensure compliance with the terms of this Consent Decree, by a private consultant or a representative of

1   Defendant who is familiar with the requirements of this Consent Decree and the Storm Water Permit.

2   The training shall be repeated as necessary to ensure that employees are familiar with the requirements

3   of this Consent Decree, the Storm Water Permit, and the Facility's SWPPP and M&RP, as appropriate

4   to the particular employee's job descriptions. Any new employee who is responsible for implementation

5   of any portion of the SWPPP, the M&RP, or compliance with other terms of the Storm Water Permit or

6   Consent Decree shall receive training within ten (10) days after being hired, or before being responsible

7   for compliance with the terms of the Storm Water Permit or Consent Decree.

8        26.     Defendant shall maintain training records to document compliance with Section II.F of

9   this Consent Decree, and shall make these records available for Plaintiff's review at the Facility. The

10   Training Program shall be specified in the SWPPP and Defendant shall modify the SWPPP as necessary

11   to reflect the training program required by this Consent Decree.

12   **F.**     **Storm Water Pollution Prevention Plan and Monitoring and Reporting Plan.**

13        27.     Within sixty (60) days of the Effective Date of this Consent Decree, Defendant shall

14   revise the Facility's SWPPP and/or M&RP as applicable to include:

15        27.1.     All BMPs that are currently utilized at the Facility;

16        27.2.     All BMPs identified and developed pursuant to this Consent Decree and/or the

17        Storm Water Permit;

18        27.3.     The specific individual(s) responsible for compliance with the Storm Water

19        Permit and this Consent Decree, including specifying which individual is

20        responsible for each area of compliance (e.g., John Doe, collecting samples);

21        27.4.     A detailed site map that includes at a minimum all information required by the

22        Storm Water Permit and this Consent Decree;

23        27.5.     A description of each industrial activity, all potential pollutant sources, and each

24        potential pollutant associated with each industrial activity and/or pollutant

25        source;

26        27.6.     Incorporate the requirements of the Storm Water Permit and this Consent

27        Decree.

28        28.     <u>Additional and Ongoing Revisions to SWPPP and/or M&RP</u>. Defendant shall revise the

SWPPP and/or M&RP if there are any changes in the Facility's operations that may possibly affect the quality of storm water discharges at the Facility, including but not limited to changes to storm water discharge point(s)/sample location(s) or changes or additions to the BMPs at the Facility resulting from an Action Plan.

29.     Commenting on Revised SWPPP and/or M&RP. Defendant shall submit any revised SWPPP and/or M&RP to CSPA for review and comment within five (5) days of completion. CSPA shall provide comments, if any, to Defendant within thirty (30) days of receipt of any revised SWPPP and M&RP. Within thirty (30) days of receiving comments from CSPA, Defendant shall incorporate CSPA's comments into any revised SWPPP and/or M&RP or shall justify in writing why any comment is not incorporated. Any disputes as to the adequacy of the SWPPP and/or M&RP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

**G.     Compliance Monitoring and Reporting.**

30.     Site Inspections. Each Reporting Year for the life of this Consent Decree, Plaintiff and its representatives may conduct up to two (2) noticed site inspections per Wet Season and, one (1) dry weather inspection (for a total of three (3) inspections per Reporting Year), plus an additional inspection if there is a dispute regarding compliance with the terms of this Consent Decree. The site inspections shall occur during normal business hours, and Plaintiff shall provide Defendant with three (3) days notice of an intended inspection. If a Wet Season inspection is noticed, CSPA will continue to follow the weather forecast, and will confirm the Wet Season inspection at least twenty-four (24) hours prior to the start of the inspection in an effort to ensure CSPA catches a rain event producing a discharge during the inspection. During inspections, Plaintiff's representatives must wear safety goggles, hard hats, vests, and appropriate clothing and footwear and remain in the presence of Defendant's representatives at all times.

31.     During the site inspection, Plaintiff and/or its representatives shall be allowed access to the Facility's SWPPP, M&RP, and other monitoring records, reports, and sampling data for the Facility. In addition, during the site inspection, Plaintiff and/or its representatives may collect samples of discharges from the Facility. Any samples collected by Plaintiff shall be submitted to a certified California laboratory for analysis in accordance with the provisions of paragraph sixteen (16) of this Consent Decree. Copies of the complete laboratory reports shall be provided to Defendant within five

(5) business days of receipt. Plaintiff shall bear all costs of inspection, sampling, and analysis using funds provided by Defendant pursuant to paragraph thirty-four (34).

32.     <u>Reporting and Documents</u>. During the life of this Consent Decree, Defendant shall copy Plaintiff on all documents related to water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any State or local agency or municipality. Such reports and documents shall be provided to Plaintiff concurrently as they are sent to the agencies and/or municipalities. Any correspondence related to Defendant's compliance with the Storm Water Permit or storm water quality received by Defendant from any regulatory agency, State or local agency, county or municipality shall be provided to CSPA within ten (10) business days of receipt by Defendant.

**H.     Environmental Project, Litigation Fees and Costs, and Stipulated Penalties.**

33.     <u>Environmental Mitigation Project</u>. To remediate environmental harms as alleged in the Complaint, Defendant shall pay Forty Thousand Dollars ($40,000.00) to be used to fund environmental project activities that will benefit the Sacramento-San Joaquin River Delta and its watershed. Payments required by this paragraph and paragraph 34, below, are to be made as set forth in paragraph 35.

34.     <u>Payment of CSPA's Litigation Costs and Compliance Monitoring and Oversight</u>. Defendant agrees to pay One Hundred Thirty Five Thousand Dollars ($135,000.00) to partially reimburse CSPA for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and preparing this lawsuit and negotiating a resolution of this matter, and to monitor Defendant's compliance with this Consent Decree, including but not limited to commenting on Action Plans.

35.     Payments required by paragraphs 33 and 34 shall be made as follows: one (1) payment of Seventy-Five Thousand Dollars ($75,000.00) shall be made within fourteen (14) days of the Effective Date; one (1) payment of Thirty Three Thousand Three Hundred and Thirty Three Dollars and Thirty Three Cents ($33,333.33) shall be made on January 1, 2017; one (1) payment of Thirty Three Thousand Three Hundred and Thirty Three Dollars and Thirty Three Cents ($33,333.33) shall be made on January 1, 2018, and; one (1) payment of Thirty Three Thousand Three Hundred and Thirty Three Dollars and Thirty Three Cents ($33,333.33) shall be made on January 1, 2019. All payments shall be made payable to: "Lawyers for Clean Water Attorney Client Trust Account" and delivered by certified mail or

overnight delivery to: Lawyers for Clean Water, Inc., 1004-A O'Reilly Avenue, San Francisco, California 94129.

36.    Stipulated Payment. Defendant shall make a stipulated payment of One Thousand Dollars ($1,000.00) for each and every missed deadline included in this Consent Decree. Payments for a missed deadline shall be used to fund environmental project activities that will benefit the Sacramento-San Joaquin River Delta and its watershed. The Stipulated Payment shall be paid to the Rose Foundation for Communities and the Environment, and mailed via certified mail or overnight delivery to: 1970 Broadway Suite 600, Oakland, California 94612, Attention: Tim Little. Defendant shall make the Stipulated Payment within thirty (30) days of a missed deadline. Defendant shall provide Plaintiff with a copy of such payment at the time it is made.

37.    Interest Payments. In the event of a missed deadline included in this Consent Decree, the Defendant shall pay interest judgment interest pursuant to two percent (2%) APR interest, which shall accrue from the first day past the date the payment, was due until the date Plaintiff receives the payment. All such payments shall be made payable to the entity to which the missed payment was owed.

**III.    DISPUTE RESOLUTION.**

38.    This Court shall retain jurisdiction over this matter until the Consent Decree terminates in accordance with paragraph eight (8) for the purposes of implementing and enforcing the terms and conditions of this Consent Decree, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

39.    Meet and Confer. A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of twenty (20) calendar days from the date of the notice.

40.    If the Settling Parties cannot resolve a dispute by the end of informal meet and confer negotiations, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Eastern District of California.

41.     Burden of Proof.

a.      Except as provided in subparagraph (b) below, the burden of proof for Formal Dispute Resolution shall be in accordance with applicable law.

b.      In the event of any disagreement or dispute between Plaintiff and Defendant over the necessity or appropriateness of implementing any particular BMP or set of BMPs, Defendant shall bear the burden of demonstrating that its BMPs, collectively, constitute BAT/BCT for the Facility, or that it is in compliance with the terms of this Consent Decree. Plaintiff shall not be required to prove that Defendant's BMPs do not constitute BAT/BCT.

42.     Litigation costs and fees incurred in conducting meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded in accord with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §§1365 and 1319, and case law interpreting that standard.

**IV.     MUTUAL RELEASE OF LIABILITY.**

43.     CSPA's Release. Upon the Effective Date of this Consent Decree, CSPA, on its own behalf and on behalf of its current and former officers, directors, employees, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives releases all persons including, without limitation, Defendant and each of its current and former officers, directors, members, employees, shareholders and each of their predecessors, successors and assigns, and each of their agents, attorneys, consultants, and other representatives from, and waives all claims which arise from or pertain to, this action, including all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed, and/or claims that were asserted in CSPA's Complaint up to the Effective Date.

44.     Defendant's Release. Upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its current and former officers, directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives releases CSPA (and its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) from, and

1   waives all claims which arise from or pertain to this action, including all claims for fees (including fees

2   of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could

3   have been claimed for matters associated with or related to CSPA's Complaint up to the Effective Date.

4          45.     Nothing in this Consent Decree limits or otherwise affects CSPA's right to address or

5   take any position that it deems necessary or appropriate in any formal or informal proceeding before the

6   Regional Board, EPA, or any other judicial or administrative body on any other matter relating to storm

7   water discharges from the Facility occurring or arising after the Effective Date of the Consent Decree,

8   but specifically excluding the discharges and all other matters addressed by this Consent Decree.

9   **V.     MISCELLANEOUS PROVISIONS.**

10         46.     No Admission of Liability. Neither this Consent Decree, the implementation of additional

11  BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding,

12  adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an

13  admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it

14  may have to any alleged violations that may be raised in the future.

15         47.     Force Majeure. A Force Majeure event is any circumstances beyond the Party's control,

16  including without limitation,any act of God, war, fire, earthquake, flood, windstorm, or natural

17  catastrophe;, civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public

18  authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or

19  approvals from, any governmental agency. Force Majeure shall not include normal inclement weather,

20  economic hardship, inability to pay, employee negligence or misconduct, or Defendant's inability to

21  obtain authorization or permission from H&H for meeting compliance and/or settlement obligation(s).

22  Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden

23  of establishing that it could not reasonably have been expected to avoid the force majeure event and

24  which by exercise of due diligence has been unable to overcome the failure of performance. The Settling

25  Parties shall exercise due diligence to resolve and remove any force majeure event.

26         48.     Construction. The language in all parts of this Consent Decree shall be construed

27  according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit,

28  the Clean Water Act, or specifically herein.

49.     <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

50.     <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

51.     <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by overnight mail, or via electronic mail, with email confirmation of receipt by the receiving party, to the following individuals:

<u>If to Plaintiff:</u>

Caroline Koch
        Caroline@lawyersforcleanwater.com
Lawyers for Clean Water, Inc.
1004-A O'Reilly Avenue
San Francisco, California 94129

With copies to:

California Sportfishing Protection Alliance
Bill Jennings, Executive Director
        Deltakeep@me.com
3536 Rainier Avenue
Stockton, California 95204

<u>If to Defendant</u>:

William Funderburk
        wfunderburk@candffirm.com
Castellón & Funderburk LLP
811 Wilshire Boulevard, Suite 1025
Los Angeles, California 90017

With copies to:

Mr. Barry Marrs
President
Security Contractors Services
5339 Jackson Street
North Highlands, CA 95660
bmarrs@scsfence.com

Any change of address or addresses shall be communicated in the manner described above for giving notices. The Settling Parties may also transmit documents electronically. Electronically transmitted documents shall be deemed submitted on the date of the electronic transmission. Any change

1   of address or addresses shall be communicated in the manner described above for giving notices.

2     52.  <u>Effect of Consent Decree</u>. Except as provided herein, Plaintiff does not, by its consent to

3   this Consent Decree, warrant or aver in any manner that Defendant' compliance with this Consent

4   Decree will constitute or result in compliance with any Federal or State law or regulation. Nothing in

5   this Consent Decree shall be construed to affect or limit in any way the obligation of Defendant to

6   comply with all Federal, State, and local laws and regulations governing any activity required by this

7   Consent Decree.

8     53.  <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of

9   which together shall constitute one original document. Telecopy, email of a .pdf signature, and/or

10  facsimile copies of original signature shall be deemed to be originally executed counterparts of this

11  Consent Decree.

12    54.  <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein,

13  may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the

14  Settling Parties.

15    55.  <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

16    56.  <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is

17  intended to be a full and complete statement of the terms of the agreement between the Settling Parties

18  and expressly supersedes any and all prior oral or written agreements covenants, representations, and

19  warranties (express or implied) concerning the subject matter of this Consent Decree.

20    57.  <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that

21  he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of

22  this Consent Decree.

23    58.  The provisions of this Consent Decree apply to and bind the Settling Parties, including

24  any successors or assigns. The Settling Parties certify that their undersigned representatives are fully

25  authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally

26  bind the Settling Parties to its terms.

27  / / /

28  / / /

59.    The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, the Defendant does not admit liability for any purpose as to any allegation or matter arising out of this Action.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO FORM                    LAWYERS FOR CLEAN WATER, INC.


Dated: March 4, 2016                   By: _____
                                           Caroline Koch
                                           Attorneys for Plaintiff

                                       CASTELLÓN & FUNDERBURK LLP


Dated: _____2016              By: _____
                                           William Funderburk
                                           Attorneys for Defendant

APPROVED AS TO CONTENT


Dated: _____2016              By: _____
                                           Bill Jennings
                                           California Sportfishing Protection Alliance


Dated: _____2016              By: _____
                                           Mr. Barry Marrs
                                           Security Contractor Services

        IT IS SO ORDERED.

Dated:  May 13, 2016

                                       _____
                                       MORRISON C. ENGLAND, JR
                                       UNITED STATES DISTRICT JUDGE

**Exhibit A**



SITE MAP / SITE DRAINAGE PLAN